**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HARD DRIVE PRODUCTIONS, INC., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | No. 10 C 05606 |
| | ) | |
| DOES 1 – 100, | ) | Hon. Judge James B. Zagel |
| | ) | Magistrate Judge Geraldine Soat Brown |
| *Defendants*. | ) | |
| | ) | |

**NONPARTY TDS TELECOMMUNICATIONS CORPORATION'S MEMORANDUM IN
SUPPORT OF ITS MOTION TO QUASH A SUBPOENA TO PRODUCE DOCUMENTS**

**Introduction**

The subpoena issued to nonparty TDS Telecommunications Corporation ("TDS") by

plaintiff Hard Drive Productions, Inc. ("Hard Drive") should be quashed in light of the failure to

fully protect the constitutional and statutory privacy and due process issues at stake.  Hard

Drive's *ex parte* submission failed to fully apprise this Court of the significant constitutional and

statutory privacy issues presented.  As a result, the subpoena was issued without the requisite

judicial finding of a *prima facie* case of copyright infringement.  The absence of this finding is

particularly troubling because Hard Drive presented solely a form declaration that never

mentions the name of this plaintiff, uses the wrong caption, only once mentions the copyrighted

work at issue here and appears to provide merely general background and generic techniques.

The constitutional privacy right of the TDS subscriber to use the Internet anonymously

likewise received only a cursory balancing relative to Hard Drive's need to identify the

anonymous defendant.  Indeed, the subpoena calls for some material that may well be disclosed

only upon issuance of a court order or warrant under Electronic Communications Privacy Act, 18 U.S.C. § 2703(c) and the Communications Act, 47 U.S.C. § 222.

In addition to these substantive defects, TDS also notes that the draft order submitted by Hard Drive and signed by this Court includes language that increases the burden of the subpoena on TDS without an opportunity to be heard being afforded to TDS. Although the actual burden in this matter is not large, it was set in an *ex parte* proceeding that purports to require TDS to provide the requested records in advance of payment and to limit the costs that can be recovered. TDS is particularly concerned because very similar cases are frequently filed and the cumulative burden of such subpoenas can become significant on telecommunications carriers. The clause in Hard Drive's draft order that refers to TDS' ability to seek compensation was inserted without any mention in the briefing and in violation of basic procedural due process. For all of these additional reasons, the subpoena should be quashed under Fed. R. Civ. P. 45(c)(3)(A)(iii-iv).

## FACTS

TDS provides voice, Internet, and data services to individuals and businesses in small and rural communities in thirty states. The subpoena in question (attached hereto as Exhibit A), dated September 14, 2010, requires TDS to produce documents to Hard Drive relevant to identifying a TDS subscriber, who allegedly infringed Hard Drive's copyright in an audiovisual work from Hard Drive's adult "*Amateur Allure*" website. The TDS subscriber in question allegedly infringed Hard Drive's copyright(s) by copying and distributing the adult content by using BitTorrent peer-to-peer ("P2P") file-sharing. Many similar cases involving BitTorrent have been filed in courts across the country with respect to other films.

The subpoena was issued by order of this Court, granting Hard Drive's *Ex Parte* Motion for Leave to Take Discovery Prior to Rule 26(f) Conference (the "Order"). (Dkt. 11.) Although

TDS' identity and location are matters of public record and were easily known by Hard Drive, Hard Drive did not inform TDS of its Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("the Motion"). (Hard Drive apparently also failed to notify the other internet service providers whose subscribers are among the 100 anonymous defendants in this lawsuit.) Because of this lack of notice, Hard Drive's motion was unopposed, and the Court did not receive any briefing in opposition to issuance of the subpoena.

While the Order observes that the Court considered the "relevant privacy issues and the unique aspects of BitTorrent protocol-based copyright infringement," (Dkt. 11 at 1), the Order does not contain any specific judicial finding as to the adequacy of Hard Drive's case or the strength of the First Amendment or the statutory rights of the anonymous defendants. The Order also imposes certain constraints on ISP's ability to receive compensation for providing the information required:

> ORDERED that any ISP which receives a subpoena shall not assess any charge to the Plaintiff in advance of providing the information requested in the Rule 45 subpoena or for IP addresses which are not controlled by such ISP, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the ISP's internal costs to notify its customers[.]

(*Id.* at 2.) After receiving the subpoena on or about September 20, 2010, and subject to and without waiver of its objections to the subpoena, TDS researched and preserved its records.

On September 30, 2010, TDS sent a letter to Hard Drive's counsel informing him of TDS' objections and offering to meet and confer about them, but those objections and multiple subsequent email and telephone efforts to discuss the motion did not result in either a response or the withdrawal of the subpoena. (*See* letter from Edward McNicholas to John Steele dated Sept. 30, 2010, attached hereto as Exhibit B.) Under the normal function of Fed. R. Civ. P. 45(c)(2)(B), these objections would have forced Hard Drive to move to compel compliance with

the subpoena, but the Order altered this presumption and required the ISP to move to quash the

subpoena.  (Dkt. 11 at 3.)

## **ARGUMENT**

I.  **THE MOTION TO QUASH SHOULD BE GRANTED BECAUSE THE SUBPOENA WAS ISSUED WITHOUT REGARD TO THE CONSTITUTIONAL AND STATUTORY PRIVACY RIGHTS OF TDS SUBSCRIBERS.**

The Court's Order summarily states that the Court considered the "relevant privacy issues

and the unique aspects of BitTorrent protocol-based copyright infringement," (Dkt. 11 at 1), but

the Court did not make findings regarding whether Hard Drive had stated a *prima facie* claim of

copyright infringement or whether Hard Drive's need to identity the John Doe defendants

outweighed the subscribers' privacy rights.  Because the subpoena was issued without

application of the safeguards necessary to protect the subscribers' constitutional and statutory

privacy interests, the subpoena subjects TDS and its subscriber to "undue burden" and "requires

disclosure of…protected matter," and should be quashed under Fed. R. Civ. Proc.

45(c)(3)(A)(iii)-(iv).

TDS has standing to assert the First Amendment and statutory privacy interests of its

subscribers, because failure to do so would have a detrimental effect on TDS's client base and

TDS has a privacy policy for its Internet services.  The Supreme Court has repeatedly found

third-party standing for such business-client relationships.  *See, e.g.*, *Virginia v. American

Booksellers Assoc.*, 484 U.S. 383, 392-93 (1988); *Dep't of Labor v. Triplett*, 494 U.S. 715, 720

(1990).

### A.  The Subpoena Was Issued Without Findings Regarding the First Amendment Privacy Interests At Stake.

The subpoena requires TDS to disclose identifying information about its subscribers,

whose right to speak, listen, and associate anonymously is protected by the First Amendment.

*See, e.g.*, *Watchtower Bible & Tract Soc'y* v. *Village of Stratton*, 536 U.S. 150, 166-67 (2002);

*Buckley* v. *American Constitutional Law Found., Inc.*, 525 U.S. 182, 200, 204 (1999); *McIntyre*

v. *Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995). The right to anonymous speech applies

equally to anonymous association via the Internet. *Reno v. ACLU*, 521 U.S. 844, 870 (1997)

(there is "no basis for qualifying the level of First Amendment scrutiny that should be applied to

[the Internet]"). In particular, because an Internet user expresses himself or herself in the

anonymous selection of content to peruse, acquire, and share, "the use of P2P file

copying networks to download, distribute, or make [copies] available qualifies as speech entitled

to First Amendment protection." *Sony Music Entm't Inc. v. Does 1-40*, 326 F. Supp. 2d 556, 564

(S.D.N.Y. 2004).

The First Amendment, of course, does not protect copyright infringement. *See, e.g.*,

*Harper & Row Publishers, Inc.* v. *Nation Enterprises*, 471 U.S. 539, 568 (1985). The lack of

protection for infringement, however, does not diminish the procedural safeguards for speech

merely *accused* of infringing a copyright, particularly when the prospect of being associated with

the adult material at issue in this matter may itself tarnish one's reputation. The law has a strong

interest in safeguarding the speech, associational, and privacy rights of Internet users, as it does

in ensuring that copyright owners are protected against infringement of their works. *Cf. S.A.R.L.*

*Louis Feraud Int'l v. Viewfinder, Inc.*, 489 F.3d 474, 480 (2d Cir. 2007) (observing that

"[i]ntellectual property laws co-exist with the First Amendment"). The legitimate interests of

copyright owners do not automatically trump the First Amendment rights of potential

defendants: such a result would conflate protected anonymous speech with unprotected speech

(i.e., copyright infringement) and have a profound chilling effect on speech. *See Ashcroft* v.

*Free Speech Coalition*, 535 U.S. 234, 244 (2002) ("The Constitution gives significant protection

from…laws that chill speech within the First Amendment's vast and privileged sphere."). This Court has previously observed that because of its significance, the First Amendment right to anonymous association alters the calculus for granting otherwise routine discovery requests:

> The landscape greatly changes…once a party objects to discovery on the ground of First Amendment associational privilege…When that happens, the inquiring party's interest in seeking to vindicate his rights by conducting discovery is pitted against the affected party's interest in protecting himself from disclosure of privileged information. Consequently, mere showings of relevancy and admissibility no longer suffice; additional considerations come into play."

*Anderson v. Hale*, No. 00 C 2021, 2001 U.S. Dist. LEXIS 6127, at *8-9 (N.D. Ill. May 10, 2001).

Because of the competing interests like those identified in *Anderson*, discovery to identify an anonymous party should issue only where procedural safeguards for protected speech are in place. *See, e.g.*, *Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432, 456 (Ct. App. Md. 2009); *John Doe No. 1 v. Cahill*, 884 A.2d 451, 455 (Del. 2005); *Dendrite Int'l, Inc.* v. *John Doe*, 775 A.2d 756, 760 (N.J. Super. 2001); *cf. Columbia Ins. Co.* v. *SeesCandy*, 185 F.R.D. 573 (N.D. Cal. 1999) (imposing "limiting principles" on the request for discovery to identify anonymous defendants which include consideration of specificity, previous steps to identify defendants and adequacy of the case (i.e., whether it could survive a motion to dismiss)). Specifically, under the seminal *Dendrite* test, the procedural safeguards necessary to vindicate the defendant's First Amendment interest in anonymous speech while enabling copyright owners to assert their intellectual property rights include the following:

> **(1) Adequacy of Case:** a judicial assessment of the plaintiff's showing of a "*prima facie* cause of action against the . . . anonymous defendants," that "can withstand a motion to dismiss for failure to state a claim upon which relief can be granted," with "sufficient evidence supporting each element of its cause of action, on a *prima facie* basis . . . ." *Dendrite*, 775 A.2d at 760.

> **(2) First Amendment Rights:** "balanc[ing] the defendant's First Amendment right of anonymous free speech against the strength of the *prima facie* case

presented and the necessity for the disclosure of the anonymous defendant's identity to allow the plaintiff to properly proceed." *Id.*

**(3) Notice:** "efforts to notify the anonymous [defendants]…and withhold action to afford the fictitiously-named defendant a reasonable opportunity to file and serve opposition to the application." *Id.*

**(4) Specificity:** identification of the "exact statements purportedly made by each anonymous [defendant] that plaintiff alleges constitutes actionable speech." *Id.*

As a growing number of courts have recognized the important speech interest in anonymity, they have authorized discovery of the identity of anonymous defendants only where such procedural safeguards are in place. For example, in *SeesCandy*, the District Court required a hearing at which standards of proof were to be satisfied prior to issuance of a pre-service subpoena. The Court explained the rationale for institution of this procedural safeguard:

> This ability to speak one's mind without the burden of the other party knowing all the facts about one's identity can foster open communication and robust debate. Furthermore, it permits persons to obtain information relevant to a sensitive or intimate condition without fear of embarrassment. People who have committed no wrong should be able to participate online without fear that someone who wishes to harass or embarrass them can file a frivolous lawsuit and thereby gain the power of the court's order to discover their identity. Thus some limiting principles should apply to the determination of whether discovery to uncover the identity of a defendant is warranted.

185 F.R.D. at 578. Likewise, another district court observed: "If Internet users could be stripped of … anonymity by a civil subpoena enforced under liberal rules of civil discovery, this would have a significant chilling effect on Internet communications and thus on basic First Amendment Rights." *Doe* v. *2theMart.com*, 140 F. Supp. 2d 1088, 1093 (W.D. Wash. 2001) (addressing discovery request for identity of nonparty in a stock manipulation case). Other courts have invoked similar concerns and required similar procedural safeguards for privacy rights in cases involving copyright infringement, defamation, trade secret violations, and discrimination. *See, e.g.*, *Interscope Records v. Does*, 558 F. Supp. 2d 1176, 1180 (D. Kan. 2008) (copyright infringement); *Sony Music*, 326 F. Supp. 2d at 564 (same); *Brodie*, 966 A.2d at 456

7

(defamation); *Dendrite*, 775 A.2d at 756 (defamation and trade secret violations); *NLRB* v. *Midland Daily News*, 151 F.3d 472 (6th Cir. 1998) (discrimination).  *But cf. Warner Bros. Records, Inc. v. Does 1-6*, 527 F.Supp.2d 1, 2 (D.D.C. 2007) (granting motion for expedited discovery for "good cause" without explaining factors contributing to "good cause").

Despite this widespread recognition of the First Amendment rights of anonymous defendants, Hard Drive claimed in its Memorandum Of Law in support of the Motion that the TDS subscriber and the other anonymous defendants have "no legitimate expectation of privacy in the subscriber information they provided to the ISPs."  (Dkt. 6 at 10.)  Hard Drive erroneously attempts to disclaim subscribers' First Amendment rights in two ways.

First, Hard Drive downplays the significance of subscribers' First Amendment rights in anonymous speech by citing to cases finding no legitimate expectation of privacy *under the Fourth Amendment* in information communicated to a third party, such as an ISP.  *See, e.g.*, *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979); *United States v. Miller*, 425 U.S. 435, 438 (U.S. 1976); *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001); *United States v. Kennedy*, 81 F. Supp. 2d 1103, 1110 (D. Kan. 2000); *United States v. Hambrick*, 55 F. Supp. 2d 504, 508 (W.D. Va. 1999).  While First and Fourth Amendment rights may be related in some circumstances involving anonymous speech, Fourth Amendment concerns that information loses a privacy interest when it is conveyed to another person is simply not relevant to the First Amendment, which is fundamentally concerned with protection of communication – expressing oneself to another person.  As the Supreme Court has made clear, First Amendment rights to anonymity and privacy continue to exist even though information is communicated to a third party.  *See, e.g.*, *Watchtower Bible & Tract Soc'y*, 536 U.S. at 166-67; *Buckley*, 525 U.S. at 204; *McIntyre*, 514 U.S. at 342.

Second, Hard Drive cites to cases that recognize that the First Amendment interests of subscribers are a significant factor, but, based on the evidence in those cases, the privacy interests of the anonymous defendants were outweighed by the copyright owner's interest in protecting its copyright. *See, e.g.*, *Interscope Records v. Does*, 558 F. Supp. 2d at 1178-80; *Sony Music*, 326 F. Supp. 2d at 564-66; *Arista Records, LLC v. Doe*, 254 F.R.D. 480, 481-82 (E.D.N.C. 2008). Contrary to Hard Drive's assertion that subscribers have *no* privacy interest, these cases stand for the proposition that subscribers do have a First Amendment interest in their online activities which may or may not be outweighed by a plaintiff's competing interests when they present adequate evidence.

Although several of those cases involved Internet copyright issues, the subpoena here is improper because it lacks the essential safeguards for subscribers' privacy rights. First, the subpoena was issued without individualized consideration of the adequacy of the copyright infringement case with respect to the TDS subscriber. In support of its claim, Hard Drive presented the boilerplate declaration – as clearly evidenced by the use of a caption for a different lawsuit involving a different client on the first page of the declaration – of Paul Hansmeier a "Manager" of a firm that performs "anti-piracy services." (Dkt. 6-1 at ¶¶ 1-2.) This declaration never actually mentions the Plaintiff in the case, and it only once refers to the copyrighted work at issue. What it does provide are generic descriptions of the Internet, BitTorrent, and copyright monitoring. Accordingly, it gives the Court insufficient detail to evaluate the strength of Hard Drive's showing with respect to any particular individual, and its generic nature raises at least some question about the degree of care taken before stripping people of their anonymity and exposing them to public allegations that they are associated with *Amateur Allure*. The declaration makes no significant effort to justify the particular method used

in this case, much less to demonstrate that this method is an accepted and reliable method for monitoring communications.  Instead, it makes merely conclusory allegations that its multiple methods are proprietary.

Lacking significant discussion of its method, the declaration fails to establish the premises necessary for competent expert testimony.  Federal Rule of Evidence 702 establishes that an expert opinion must be based upon "sufficient facts or data," "reliable principles and methods," and reliable application of the principles and methods to the facts at issue.  Fed. R. Evid. 702.  The Supreme Court's decision in *Daubert* requires the district court act as an evidentiary gatekeeper to determine whether a putative expert's declaration is sufficiently relevant and reliable to satisfy the rule's threshold.  *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1999); *United States v. Lupton*, No. 09-2710, 2010 U.S. App. LEXIS 18238, at *17 (7th Cir. Sept. 1, 2010).  Other than this form declaration – the probative value of which is, at best, uncertain – Hard Drive's motion fails to provide support for its conclusion of infringement with respect to TDS' subscriber.

The subpoena is also improper because it was issued without any significant findings as to the anonymous defendants' First Amendment and statutory privacy rights, much less any judicial balancing of the weight of the subscribers' First Amendment rights relative to the strength of Hard Drive's claims and need to identify the John Doe defendants.  This is particularly concerning here, where the information requested will reveal highly sensitive, personal information about the subscriber relating to his perusal and alleged copying of adult content on the "*Amateur Allure*" website.

Because the subpoena was issued without the appropriate procedural safeguards for First Amendment rights – safeguards necessary to distinguish between protected and unprotected speech – it is unduly burdensome and calls for production of "protected matter."  Accordingly, it should be quashed.  Fed. R. Civ. P. 45(c)(3)(A)(iii-iv).

> **B. The Subpoena Was Issued Without Findings Regarding the Federal Statutory Privacy Interests At Stake and in Substantive Violation of Those Interests.**

A second issue is that the discovery available to Hard Drive is likely restricted by federal statute to exclude MAC and IP addresses.  Hard Drive's briefing neglected to mention the federal statutes relevant here, The Communications Act, 47 U.S.C. § 222, and the Electronic Communications Privacy Act, 18 U.S.C. § 2703(c).  These statutes limit the information that a telecommunications carrier may disclose absent a warrant, consent, court order in a criminal investigation or request by law enforcement.

First, section 222(c)(1) of the Communications Act, expressly commands that:

> Except as required by law or with the approval of the customer, a telecommunications carrier that receives or obtains customer proprietary network information by virtue of its provision of a telecommunications service shall only use, disclose, or permit access to individually identifiable customer proprietary network information in its provision of (A) the telecommunications service from which such information is derived, or (B) services necessary to, or used in, the provision of such telecommunications service, including the publishing of directories.

Although this statute applies to the carriers, it does limit their ability to respond in these circumstances.  Congress specified the limits of such a response in the Stored Communications Act, 18 U.S.C. § 2703(c) (which is a title in the Electronic Communications Privacy Act or ECPA).  *See McVeigh* v. *Cohen*, 983 F. Supp. 215, 219 (D.D.C. 1998) (describing ECPA requirements for obtaining identifying information of a subscriber from an internet service provider).  ECPA provides that:

(c) Records Concerning Electronic Communication Service or Remote
Computing Service. –

     (1) A governmental entity may require a provider of electronic
communication service or remote computing service to disclose a record
or other information pertaining to a subscriber to or customer of such
service (not including the contents of communications) only when the
governmental entity -
          (A) obtains a warrant issued using the procedures described in the
Federal Rules of Criminal Procedure by a court with jurisdiction
over the offense under investigation or equivalent State warrant;
          (B) obtains a court order for such disclosure under subsection (d)
of this section [which provides for court orders in criminal
investigations]; . . . or
          (E) seeks information under paragraph (2).

     (2) A provider of electronic communication service or remote computing
service shall disclose to a governmental entity the -
          (A) name;
          (B) address;
          (C) local and long distance telephone connection records, or
records of session times and durations;
          (D) length of service (including start date) and types of service
utilized;
          (E) telephone or instrument number or other subscriber number or
identity, including any temporarily assigned network address;
and
          (F) means and source of payment for such service (including any
credit card or bank account number),
of a subscriber to or customer of such service when the governmental
entity uses an administrative subpoena authorized by a Federal or State
statute or a Federal or State grand jury or trial subpoena or any means
available under paragraph (1).

The information available via subpoena (that is, absent a warrant, consent, court order in

a criminal investigation or request by law enforcement) is thus limited to items (A) through (F)

in section 2703(c)(2).  Contrary to this statutory scheme, the subpoena at issue requires

production not only of the "name, current (and permanent) address, telephone numbers" of the

persons associated with certain IP addresses, but also their "e-mail addresses and Media Access

Control addresses," which are not listed among the types of information authorized for civil

disclosure by sections 2703(c)(1)(E) and 2703(c)(2), unless one reads the term "address" to include "e-mail address" and considers the "Media Access Control addresses" to fall within (E). Thus, with respect to this information, the subpoena does not comport with the express federal statutory scheme, and TDS' compliance with this subpoena would not be statutorily permissible. Although the Court could order production under 2703(c)(1), a mere subpoena would not be adequate under 2703(c)(2) unless the Court is construing the statute's categories liberally.

Because the subpoena is overbroad and conflicts with the disclosure provisions of a federal statute, the subpoena should be quashed. *See* Fed. R. Civ. Proc. 45(c)(3)(A)(iii)-(iv).

## II.   THE MOTION TO QUASH SHOULD BE GRANTED BECAUSE THE SUBPOENA DEPRIVES TDS OF PROCEDURAL DUE PROCESS.

The subpoena and the Order authorizing its issuance purport to require production of TDS' data while restricting TDS' ability to seek compensation.  (Dkt. 11 at 2.)  Although the cost of preserving records with respect to one individual is not overwhelming (and would likely reflect about an hour worth of time), these cases are filed frequently and their cumulative impact can be significant.  In particular, the Order would make collections in these cases unlikely for ISPs because it requires that "any ISP which receives a subpoena shall not assess any charge to the Plaintiff in advance of providing the information requested in the Rule 45 subpoena."   In these cases, however, the cost to generate a special bill and collect the fee is frequently as much as the cost to preserve the records and provide notice such that it would be uneconomic to pursue individuals who did not pay for their records in advance.  Moreover, the Order does not allow the ISP to bill for duplicates or to reflect its true internal costs because it excludes costs "for IP addresses which are not controlled by such ISP, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the ISP's internal costs to notify its customers[.]"

In this case, Hard Drive sought the subpoena in an *ex parte* proceeding, without providing TDS (or any other ISP) with any notice or any opportunity to be heard prior to issuance of the subpoena.  Accordingly, the draft order submitted by Hard Drive should not have included clauses that limit TDS' ability to seek compensation.  Allowing such a limit without notice denies TDS procedural due process because it imposes an undue burden.

Due Process requires affording the individual the opportunity to be heard "at a meaningful time and in a meaningful manner."  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).  Accordingly, a deprivation of property must "be preceded by notice and opportunity for hearing appropriate to the nature of the case."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 540- 42 (1985); *see also Becker v. Illinois Real Estate Admin. & Disciplinary Bd.*, 884 F.2d 955, 958 (7th Cir. 1989) (notice should be ex ante unless the interest in an immediate deprivation outweighs the interest in a pre-deprivation hearing).

Hard Drive made no effort to inform TDS of the hearing nor did its Motion contain any discussion of its need for a subpoena relative to TDS' property interest in its data.  Moreover, the motion did not provide any rationale for the clauses limiting the compensation available to TDS or forcing TDS to produce the records first and get paid later.  Accordingly, the subpoena was issued without providing TDS notice or the opportunity to be heard, and without any finding of a reason why a pre-deprivation hearing was not warranted.

## CONCLUSION

For the foregoing reasons, TDS respectfully requests that this Court grant its Motion to Quash A Subpoena to Produce Documents.

Respectfully submitted,

Dated: October 20, 2010                    TDS TELECOMMUNICATIONS
                                           CORPORATION


By:   s/ Richard J. O'Brien
                                           One of Its Attorneys

Richard J. O'Brien
robrien@sidley.com
Rachel D. Sher
rsher@sidley.com
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, Illinois 60603
Tel: (312) 853-7000
Fax: (312) 853-7036

Edward McNicholas
eMcNicholas@sidley.com
Elisa K. Jillson
ejillson@sidley.com
SIDLEY AUSTIN LLP
1501 K Street, NW.
Washington , DC 20005
Tel:  (202) 736-8000
Fax: (202) 736-8711

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on the 20th day of October 2010, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system, in compliance with Local Rule 5.2(a).

By:   s/ Richard J. O'Brien

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., )<br><br>Plaintiff, )<br><br>      v. )<br><br>DOES 1 – 100, )<br><br>      Defendants. ) | Civil No. 1:10-cv-05606<br><br>Hon. Judge Zagel<br>Magistrate Judge Brown |

**LIST OF EXHIBITS OF
TDS TELECOMMUNICATIONS CORPORATION IN SUPPORT OF
ITS MOTION TO QUASH A SUBPOENA TO PRODUCE DOCUMENTS**

Exhibit A      Subpoena in the above-referenced matter, attaching Order Granting Plaintiff's Ex Parte Motion for Leave to Take Discovery Prior to Rule 26(f) Conference

Exhibit B      Letter from Edward R. McNicholas to John L. Steele, dated September 30, 2010

# Exhibit A

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the

Northern District of Illinois

| HARD DRIVE PRODUCTIONS, INC. | ) |
|---|---|
| *Plaintiff* | ) |
| v. | ) |
| DOES 1 - 100 | ) |
| | ) |
| *Defendant* | ) |

Civil Action No.  1:10-cv-05606

(If the action is pending in another district, state where:     )

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:  TDS Telecommunications Corporation Attn: Subpoena Compliance c/o CSC - Lawyers Incorporating Service Company 8040 Excelsior Drive Suite 400 Madison, WI 53717

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: In accordance with the conditions in the attached order, provide the name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of all persons whose IP addresses are listed in the attached spreadsheet. We will be pleased to provide data to you in the most efficient and cost effective format if you let us know what your preferred format is.

| Place: Steele Law Firm, LLC<br>161 N Clark St. Ste. 4700<br>Chicago, IL 60601 | Date and Time:<br><br>11/01/2010 10:00 am |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:  ___09/14/2010___

CLERK OF COURT

OR

_____          /s/ John Steele
*Signature of Clerk or Deputy Clerk*          *Attorney's signature*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*  Hard Drive Productions Inc.
_____ , who issues or requests this subpoena, are:

John Steele, Steele Law Firm LLC, 161 N Clark St. Ste. 4700, Chicago, IL 60601, john@steele-law.com; 312-893-5888

**SUBPOENA ATTACHMENT CASE 1:10-cv-05606**

The times listed below are in Central Standard Time

| IP | ISP | Date/Time (CST) |
|---|---|---|
| 75.100.20.96 | TDS Telecom | 8/26/10 8:16 AM |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC. | ) |
| | ) CASE NO.: *10 C 5606* |
| Plaintiff, | ) |
| | ) *10 cv 5606* |
| v. | ) Judge: |
| | ) Magistrate Judge: |
| DOES 1 – 100 | ) |
| | ) |
| Defendants. | ) EXPEDITED HEARING REQUESTED |
| | ) |
| | ) |

**████████ ORDER GRANTING PLAINTIFF'S *EX PARTE* MOTION**
**FOR LEAVE TO TAKE DISCOVERY PRIOR TO RULE 26(f) CONFERENCE**

The Court has reviewed all the papers filed in connection with the Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to Rule 26(f) Conference ("Motion"), and considered the sworn declaration and issues raised therein, including the relevant privacy issues and the unique aspects of BitTorrent protocol-based copyright infringement.

ORDERED that Plaintiff's *Ex Parte* Motion for Leave to Take Discovery Prior to Rule 26(f) Conference is granted; it is further

ORDRED that Plaintiff is allowed to serve immediate discovery on the Internet service providers (ISPs) listed in <u>Exhibit A</u> to the Complaint filed in this matter to obtain the identity of each Doe Defendant by serving a Rule 45 subpoena that seeks information sufficient to identify each Defendant, including name, current (and permanent) addresses, telephone numbers, e-mail addresses, and Media Access Control addresses; it is further

ORDERED that the Plaintiff may serve immediate discovery on any ISP identified by the same means detailed in the Declaration and Motion, or identified as providing network access or online services to one or more Doe Defendants, by an ISP upon whom a Rule 45 subpoena is served, for which an infringing download has been identified by individual IP address together with the date and time access to a torrent swarm by such IP address was made for the purpose of downloading an unlawful copy of the Plaintiff's copyrighted creative works. Such Rule 45 subpoena shall seek information sufficient to identify each Doe Defendant, including his or her name, current (and permanent) addresses, telephone number, e-mail address, and Media Access Control Address; it is further

ORDERED that Plaintiff is allowed to serve a Rule 45 subpoena in the same manner as above to any ISP that is identified in response to a subpoena as a provider of Internet services to one of the Doe Defendants; it is further

ORDERED any information disclosed to Plaintiff in response to a Rule 45 subpoena may be used by Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint; it is further

ORDERED any ISP which receives a subpoena shall not assess any charge to the Plaintiff in advance of providing the information requested in the Rule 45 subpoena or for IP addresses which are not controlled by such ISP, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the ISP's internal costs to notify its customers; it is further

2

ORDERED that any ISP which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such ISP; it is further

ORDERED that if the ISP and/or any Defendant wish to move to quash the subpoena, the party must do so before the return date of the subpoena, which shall be 30 days from the date of service; it is further

ORDERED that the ISP shall preserve any subpoenaed information pending the resolution of any timely filed motion to quash; and it is further

ORDERED that Plaintiff shall provide each ISP with a copy of this Order.

Dated: _9-14-2010_

_James B. Zagel_
United States District Judge

3

# Exhibit B



SIDLEY AUSTIN LLP
1501 K STREET, N.W.
WASHINGTON, D.C. 20005
(202) 736 8000
(202) 736 8711 FAX

BEIJING      GENEVA       SAN FRANCISCO
BRUSSELS     HONG KONG    SHANGHAI
CHICAGO      LONDON       SINGAPORE
DALLAS       LOS ANGELES  TOKYO
FRANKFURT    NEW YORK     WASHINGTON, DC

FOUNDED 1866

September 30, 2010

**By U.S. mail and e-mail to john@steele-law.com**

John L. Steele
Steele Law Firm, LLC
161 N. Clark St., Suite 4700
Chicago, IL 60601

Re:      Hard Drive Productions, Inc. v. Does 1 – 100, No. 1:10-cv-05606 (N.D. Ill.)

Dear Mr. Steele:

        We represent TDS Telecommunications Corp. ("TDS") in connection with the
subpoena served by Hard Drive Productions, Inc. ("Hard Drive") in the above-captioned action
via mail postmarked September 16, 2010 ("Subpoena").  Pursuant to Rule 45(c)(2)(B) of the
Federal Rules of Civil Procedure, non-party TDS, through undersigned counsel, objects as
follows to the Subpoena and its Attachment:

General Objections

        1.      TDS objects that the Subpoena and the order that authorized its issuance were
approved in an ex parte proceeding without any notice to TDS.  The identity and location of TDS
were well-known to Hard Drive, yet Hard Drive made no effort whatsoever to contact TDS or
otherwise inform it of the hearing on its Motion for Leave to Take Discovery Prior to Rule 26(f)
Conference.  Nevertheless, the order purports to command TDS to take action and to limit TDS'
ability to seek compensation for these actions.  This procedure denies TDS procedural due
process and renders the Subpoena properly void ab initio.  TDS objects that Hard Drive
improperly drafted the proposed ex parte order in a manner designed to purport to curtail TDS'
rights without any notice or opportunity for TDS to be heard.  The subpoena should be
withdrawn and a new hearing, with full, reasonable notice to TDS – as well as the other known
ISPs – should be held.  TDS further objects to any requirements greater than those required by
the Federal Rules of Civil Procedure, applicable local rules, or other applicable law.

        2.      TDS objects that compliance with the Subpoena would be unduly burdensome to
a non-party to this action because the burden of the proposed discovery outweighs its likely
benefit.  The motion provides literally no evidence about the potential marginal harm of having
one extra copy of Hard Drive's claimed works being made, and it fails even to suggest that the
potential benefit of this evidence (discounted by the prospects of success) is greater than the
potential costs for TDS to search its logs, provide the request notice, and seek compensation.



John L. Steele
September 30, 2010
Page 2

3.       These objections and any attempts to resolve or discuss such objections shall not be construed as a waiver of any right to seek relief from the appropriate forum, including motions to quash or modify the Subpoena or for entry of a protective order.  The presence of an express reservation or objection shall not be deemed to imply the absence of implied reservations or objections and shall not prejudice our ability to expand upon the basis and extent of any objection before the court if required.  In particular, the right to modify and supplement these responses and objections, in general and in particular, is expressly reserved and any future production of any documents pursuant to any requests is not a waiver of that right.

<u>Specific Objections</u>

Each and every Specific Objection below incorporates each General Objection, as if fully set forth herein.  None of the Specific Objections limits the scope or applicability of these General Objections.

1.       TDS objects that the Subpoena calls for protected material relating to the First Amendment rights of its subscribers to use the Internet, associate, and speak anonymously. Disclosure of the materials called for by this Subpoena would violate and have a chilling effect upon these First Amendment rights.

2.       TDS objects that the Subpoena was improperly issued, without any findings as to the First Amendment rights of TDS' subscribers relative to Hard Drive's need for identification of the anonymous defendants.

3.       TDS objects that the Subpoena was improperly issued, without the submission of evidence sufficient to establish a prima facie case of copyright infringement or other violation of law or a specific judicial finding of such a showing.

4.       TDS objects that the Subpoena was improperly issued, without sufficient time to provide notice to the relevant subscriber.

5.       TDS objects that the Subpoena calls for material (namely e-mail addresses and Media Access Control addresses) that may be disclosed only upon issuance of a court order or warrant, as specified in the Communications Act, 47 U.S.C. § 222, and the Electronic Communications Privacy Act, 18 U.S.C. § 2703(c).

6.       TDS objects that the Motion necessary to serve to the Subpoena was not timely served upon TDS in order to provide it with a notice and opportunity to be heard.

* * *



John L. Steele
September 30, 2010
Page 3


        In light of these objections, TDS will not produce any documents in response to the Subpoena, and we request that you withdraw the Subpoena and confirm the same in writing to the undersigned.

        Subject to and without waiving of these objections, we are prepared to discuss them with you in a good faith effort to avoid the need for motions in this matter.

        If you have any questions regarding these objections, please contact me at (202) 736-8010.

Sincerely,

Edward R. McNicholas